Curia, per

O’Neall, J.
In discussing this case, I do' not propose to notice the grounds of appeal in the.order in which they are set down.' Two main questions- are to be decided: 1st, Was the man, Patrick E. Quinn, when he came to South Carolina, free? 2d, Has he in any way forfeited or-lost his right to freedom since ?
1. Patrick was born the slave of Edward Quinn, then a citizen of Georgia. His master, thought proper to carry him to Ireland. What was his condition there 7 According to Somerset vs. Stewart, (Loft, 1,) he became thereby free. That that case carries the law further than I should willingly acknowledge, is true. But if the master carries a slave to Great Britain to set him free, or while there assents in any way to his freedom, there can be no objection to the validity of freedom thus acquired. For if the law of the place does not .prohibit emancipation, no one can object to the dissolution of the tie of slavery. It is true, if a master carries his slave to Great Britain, or elsewhere, where slavery does not exist, and against his will, his slave be allowed to go as free, I have no doubt he may reclaim him — or if the slave returns to a country where slavery is recognized, he ipso facto is remitted to his original condition.
In this case, the master was in’ Ireland for more than two years, during which time he had with him the boy Patrick. He there died in ’34, and his will and codicil were proved in the Prerogative Court of that country. It might be an interesting inquiry, whether Patrick, by the law of the place, if to be regarded at all as property, did not thereby become the property of the Rev. Francis Goodwin, Parish Priest of Drummully, in the *191 County of Terinamgh, Ireland, the executor named for, and who qualified in Ireland. But in the view I take of this case, it is not necessary to notice that, further than to say that, as executor, his assent to whatever was necessary to confer freedom on Patrick is necessarily to be implied from his permitting him to follow the condition assigned to him by the testator. By the original will, the testator directed all his slaves — those in Georgia, as well as Patrick and his mother, then in Ireland, to be set free if an Act of the Legislature of the State of Georgia for that purpose could be obtained; and, if not, then that they should be allowed to go wherever they could be free. If the right of freedom depended on this clause, then it might be very well contended that Patrick, in a slave country, such as South Carolina or Georgia, would remain a slave, no matter in what point of view he might have been regarded in Ireland. But the fifth clause of the codicil gives a very different aspect to the case. For in it the testator says, “ I will and bequeath the sum of £50 sterling to the black child whom I brought to this place, called Patrick Edward Quinn, and I allow my wife to take care of him, to give him a good education, and, when he arrives at the proper age, to send him to a decent trade.”
This clause, where it is permissible by law to manumit a slave by will, would, on being assented to by the executor, confer freedom. In a country where negro slavery is not recognized, as in Ireland, and in other parts of the kingdom of Great Britain, it would certainly be regarded as a virtual acknowledgment, on the part of the master, that the negro was free, by his consent. For it is to be remarked that here he does not speak of Patrick, as he did the March preceding, in his will. Then he spoke of him as his property. But now, in the codicil of September, he calls him “the black child I brought to this place.” This shews that he had ceased to regard him as property. The bequest to him .of a pecuniary legacy, the placing him in the care of his wife to be educated, and then to be put to a trade, are conclusive of his assent to freedom. This therefore establishes that the negro was free in Ireland, both by the general law, and also by the assent of his master, as evidenced by his will.
*192 2. TKe possession by Mrs. Clarke, the wife of the testator, could not in any point of view defeat the freedom of Patrick. For she received him under the will as a person committed to her care, and not as property. -She and her second husbands Clarke, according to the testimony of Bones, did not hold him as a slave,-but as free. That any,right against his freedom could arise from her possession, is utterly inconsistent with the fiduciary character in which she stood to him. By the codicil, and her acceptance of the trust, she became his testamentary guardian. If therefore she and Clarke had been in possession for many years after he had attained to full age, I should have held that it could not affect the right of freedom. Indeed, I know of no statutory bar which would cut off that right. But here it is perfectly idle to talk about it; For the negro, before he- fled from the service of the plaintiff, Eugenia, had not been of age four years. That the negro became a slave by entering this State against the law, is not true. It is possible he might have been condemned and sold under the provisions of the Act of 1835, if he came to this State' after its enactment, and of his own will. But he had not been condemned, nor sold under any such Act. Nor did he come to the- State of his own- will; for he was ,a minor when he came. His coming must be ascribed to Clarke and wife, and not to himself. . It cannot be necessary to argue the proposition, that the silence of the negro, when sold as the property of Clarke, or of Mrs. Clarke, could not affect his right to freedom ; for the status arising from his color compelled him to be silent. But never in any aspect could I consent, that a freeman should be concluded by any legal implication arising from his failing to assert his right -to freedom, when he was in the hands of another, who chose to sell him as a slave.
These views dispose of the case, and shew that the plaintiffs have no right of property; and therefore that the verdict below is right.
The motion for'-a new trial is dismissed.
Evans, Wardlaw, Frost, Withers and Whitner, JJ., concurred.

Motion dismissed.